UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>ABENGOA BIOENERGY US HOLDING, LLC, *et al.*,<br><br>            Debtors. | Chapter 11<br><br>Case No. 16- 41161-659<br><br>(Jointly Administered)<br><br>**Hearing Date and Time:**<br>February 15, 2017 at 10:00 am<br>(Prevailing Central Time)<br><br>**Objection Deadline:**<br>February 8, 2017<br><br>**Hearing Location:**<br>Courtroom 7 North |

**DEBTORS' MOTION FOR AN ORDER EXTENDING
EXCLUSIVITY PERIODS WITHIN WHICH TO FILE
A CHAPTER 11 PLAN AND SOLICIT VOTES THEREON**

Abengoa Bioenergy US Holding, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for entry of an order, pursuant to section 1121(d) of title 11 of the United States Code ("Bankruptcy Code"), extending the Debtors' exclusive periods within which to file and solicit acceptances of a chapter 11 plan (the "Exclusivity Periods") by 90 days from January 19, 2017 and March 20, 2017, respectively, to April 19, 2017 and June 18, 2017, respectively.  The Debtors seek these extensions to preserve the efficiency of the plan process and to allow them to remain focused on negotiations with the Committee and other stakeholders to formulate a chapter 11 plan that will maximize the value to the Debtors' creditors and estates. In support of the Motion, the Debtors respectfully represent as follows:

1

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief requested herein is section 1121(d) of the Bankruptcy Code.

## BACKGROUND

### A. Procedural Background

2. On February 24, 2016 (the "Original Petition Date"), Abengoa Bioenergy US Holding, LLC, Abengoa Bioenergy Company, LLC, Abengoa Bioenergy of Nebraska, LLC, Abengoa Bioenergy Engineering & Construction, LLC, Abengoa Bioenergy Trading US, LLC, and Abengoa Bioenergy Outsourcing, LLC (the "Original Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3. On June 12, 2016 (the "Second Petition Date"), Abengoa Bioenergy Meramec Renewable, LLC, Abengoa Bioenergy Funding, LLC, Abengoa Bioenergy Maple, LLC, Abengoa Bioenergy of Indiana, LLC, Abengoa Bioenergy of Illinois, LLC, and Abengoa Bioenergy Operations, LLC (the "Additional Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. On June 12, 2016, the Debtors filed *The Debtors' Motion for Entry of an Order (I) (A) Approving and Authorizing Bidding Procedures in Connection with the Sale of One or More of the Debtors' Assets, (B) Approving Stalking Horse Protections, (C) Approving Procedures Related to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Notice Thereof, and (II) (A) Authorizing the Sale of one or More of the Debtors' Assets Free and Clear of All Liens, (B)*

2

*Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief* [Docket No. 378] (the "Sale Motion").

5. On June 16, 2016, this Court entered the *Order Extending Debtors' Exclusive Periods Within Which to File a Plan of Reorganization and Solicit Votes Thereon* [Docket No. 405], which extended (a) the Original Debtors' Exclusivity Period within which to file a chapter 11 plan period (the "Exclusive Filing Period") by 120 days, through and including October 21, 2016, and (b) the Original Debtors' Exclusivity Period within which to solicit acceptances to a chapter 11 plan (the "Exclusive Solicitation Period") by 120 days, through and including December 20, 2016, without prejudice to the Original Debtors' right to seek further extensions of the Exclusivity Periods.

6. On August 30, 2016, this Court entered several orders collectively approving the sale of substantially all of the Debtors' assets. *See Order (A) Approving and Authorizing the Sale of the Colwich Assets Pursuant to the Successful Bidder's Asset Purchase Agreement Free and Clear Of All Liens, Claims, Encumbrances And Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief* [Docket No. 622] (the "Colwich Sale Order"); *Order (A) Approving and Authorizing the Sale of the Maple Assets Pursuant to the Successful Bidder's Asset Purchase Agreement Free and Clear Of All Liens, Claims, Encumbrances And Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief* [Docket No. 623] (the "ABI/ABIL Sale Order"); *Order (A) Approving and Authorizing the Sale of the Ravenna Assets Pursuant to the Successful Bidder's Asset Purchase Agreement Free and Clear Of All Liens, Claims, Encumbrances And Other Interests, (B) Approving the Assumption and Assignment of*

3

*Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief* [Docket No. 624] (the "Ravenna Sale Order"); and *Order (A) Approving and Authorizing the Sale of the York Assets Pursuant to the Successful Bidder's Asset Purchase Agreement Free and Clear Of All Liens, Claims, Encumbrances And Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief* [Docket No. 625] (the "York Sale Order" and together with the Colwich Sale Order, the ABI/ABIL Sale Order, and the Ravenna Sale Order, the "Sale Orders"). Since that date, the Debtors have consummated the sale of substantially all of their assets.

7. On October 20, 2016, this Court entered the second *Order Extending Debtors' Exclusive Periods Within Which to File a Plan of Reorganization and Solicit Votes Thereon* [Docket No. 723], which extended (a) the Exclusive Filing Period of the Original Debtors and the Additional Debtors by 90 and 101 days, respectively, through and including January 19, 2017, and (b) the Exclusive Solicitation Period of the Original Debtors and the Additional Debtors by 90 and 101 days, respectively, through and including March 20, 2017, without prejudice to the Debtors' right to seek further extensions of the Exclusivity Periods.

8. The Debtors' cases are jointly administered and the Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

9. On March 11, 2016, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed in these chapter 11 cases.

4

10. Additional information about the Debtors' business operations, their capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Sandra Porras Serrano in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 12] and the *Supplemental Declaration of Sandra Porras Serrano* [Docket No. 373] and fully incorporated herein by reference.

11. In addition to overseeing the Debtors in these chapter 11 cases, the Debtors' management has been responsible for guiding several of the Debtors' affiliates (the "Delaware Debtors") through their chapter 11 cases in the District of Delaware, which were commenced on April 6, 2016 as part of the Abengoa S.A.'s global restructuring efforts. The Delaware Debtors' plan of reorganization and liquidation (the "Delaware Plan") was recently confirmed by the Bankruptcy Court for the District of Delaware on December 15, 2016. *See In re Abeinsa Holding, Inc. et al.*, Case No. 16-10790 (KJC) (Bankr. D. Del., Docket No. 1042). Furthermore, Abengoa Bioenergy Biomass of Kansas, LLC ("ABBK"), another affiliate of the Debtors, has a chapter 11 case pending in the District of Kansas. The Debtors' management is also focusing on developing a chapter 11 plan of liquidation for ABBK.

### B. The Debtors' Restructuring Efforts

12. Since the commencement of these chapter 11 cases, the Debtors and their professionals have undertaken substantial efforts to accomplish three major tasks: (i) assuring smooth transition to operating as debtors in possession in chapter 11 cases; (ii) restarting two ethanol production facilities that had been shuttered in late 2015 due to the lack of funding; and (iii) consummating a sale process for substantially all of the Debtors' assets. To that end, the Debtors worked diligently with their advisors to obtain DIP Financing, and to develop a budget that would enable to the Debtors to accomplish their near-term operational goals, instill

5

confidence in their suppliers, customers, and employees, and facilitate the marketing process in order to maximize the value of the Debtors' assets.

13. As the Court is aware, the Debtors have consummated the sale of substantially all of their assets. Since consummation of the sale, the Debtors, together with their advisors, have been focused on developing a chapter 11 plan. A critical element of this process has been to engage the Committee and its advisors in negotiations in an attempt to formulate a consensual chapter 11 plan. Because of the significant impact that the Delaware Plan has on many of the largest creditors in these cases, the efforts with the Committee to negotiate a consensual plan have intensified since the confirmation of the Delaware Plan in December. The Debtors believe that, with the substantial progress made with the Committee in formulating a consensual chapter 11 plan that they expect to file no later than January 25, 2017, the relief requested in this Motion to allow time to finalize certain negotiations related thereto is appropriate, necessary, and in the best interest of all stakeholders.

## RELIEF REQUESTED

14. By this Motion, the Debtors respectfully request entry of an order extending (a) the Exclusive Filing Period of the Debtors by 90 days, through and including April 19, 2017, and (b) the Exclusive Solicitation Period of the Debtors by 90 days, through and including June 18, 2017, without prejudice to the Debtors' right to seek further extensions of the Exclusivity Periods.

## BASIS FOR RELIEF

15. Sections 1121(b) and (c) of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") provide for an initial period of 120 days after the date of the order for relief during which the debtor has the exclusive right to file a chapter 11 plan. Section 1121(c) of the Bankruptcy Code also states that if the debtor files a chapter 11 plan within the 120-day

6

exclusivity period, competing plans may not be filed before 180 days after the date of the order for relief to allow the debtor to solicit and obtain acceptances.

16. Pursuant to section 1121(d)(1) of the Bankruptcy Code, this Court may extend a debtor's exclusive periods upon a demonstration of cause:

> Subject to paragraph (2)[1], on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

17. The exclusive periods provided by Congress were incorporated into the Bankruptcy Code to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan without the deterioration and disruption of the debtor's business that might be caused by the filing of competing plans by non-debtor parties. Moreover, the Debtors are the only parties that owe fiduciary duties to the entire enterprise, and they are the only parties that are duty-bound to formulate a chapter 11 plan that takes into account the interests of the estate and all its constituents. See Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 174 (2d Cir. 2005) (Congress vested administration of the Chapter 11 estate solely in the hands of the debtor-in-possession). To allow the Exclusivity Periods to lapse would defeat the very purpose of section 1121 of the Bankruptcy Code.

18. The principal goal of chapter 11 is the successful reorganization of debtors in order to increase the pool of assets available to creditors. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527 (1984); United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983). The

---

[1] Paragraph (2) states that the exclusive periods may not be extended beyond 18 and 20 months after the petition date.

congressional intent woven throughout Chapter 11 is that the principal means of a successful rehabilitation should be a considered and consensual plan. See Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987). To promote the formulation of a considered and consensual plan, Congress gave the debtor the exclusive right to propose a chapter 11 plan for a specified and extendable period. See In re Ames Dep't Stores Inc., No. 90-11233, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors.").

19. Whether "cause" exists to extend a debtor's exclusive periods to file and solicit acceptances of a chapter 11 plan is a decision committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case. See Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.), 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003); In re Texaco, Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987). Congress intended to give the bankruptcy court maximum flexibility to make such determination. In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (citation omitted); see also H.R. Rep. No. 95-595, at 232 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6191. While the term "cause" is not defined by the statute, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." In re McLean Indus., Inc., 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 95-595, at 231 (1978)); see also In re Borders Group, Inc., 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) (citation omitted) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity.").

20. In determining whether cause exists to extend a debtor's exclusive periods, courts in this circuit have considered numerous factors, including:

8

(1) the large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a debtor with a complex financial structure;

(2) the need of the creditors' committee to negotiate with the debtor and the ability to prepare adequate information;

(3) the existence of good faith progress towards reorganization;

(4) the existence of an unresolved contingency;

(5) the fact that the debtor is paying bills as they become due;

(6) the length of previous extensions of exclusivity;

(7) breakdowns in plan negotiations, such that the continuation of the debtor's exclusivity period would result in the debtor having an unfair bargaining position over creditors;

(8) the debtor's failure to resolve fundamental reorganization matters essential to its survival; and

(9) the gross mismanagement of the debtor.

See In re Hoffinger, 292 B.R. at 643-44 (citations omitted); In re Acceptance Ins. Cos., No. 05-80059 (TJM), 2008 Bankr. LEXIS 2265, at *3-6 (Bankr. Neb. Aug. 20, 2008) (citations omitted); see also In re Interco. Inc., 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992). Not all factors are relevant to every case, and courts have used a subset of the above factors to determine whether cause exists. See In re Hoffinger, 292 B.R. at 644 ("As always, we emphasize that these are only factors, not all of which are relevant in every case. . . . It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."). When determining whether cause exists, courts assess the totality of the circumstances. See In re McLean, 87 B.R. at 834.

21. An objective analysis of the relevant factors demonstrates that the Debtors are doing everything that they should be doing as chapter 11 debtors to facilitate a successful conclusion to these chapter 11 cases, and that sufficient cause exists for the extension of the Exclusivity Periods to April 19, 2017 and June 18, 2017.

9

A. **The Debtors' Cases Are Large and Complex.**

22. Courts have regularly extended the exclusive periods under section 1121(d) of the Bankruptcy Code in large, complex chapter 11 cases so as to afford the debtor time to stabilize its business and lay the groundwork for an effective chapter 11 plan before beginning the formal plan formulation, negotiation, filing and solicitation process. See, e.g., In re Wisc. Barge Line, Inc., 78 B.R. 946, 948 (Bankr. E.D. Mo. 1987) (stating that if extensions of exclusivity were denied, "it would be virtually impossible for major corporations that are faced with extensive and time consuming litigation . . . to ever enjoy the exclusive benefits provided by 11 U.S.C. § 1121"); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (stating that the "traditional ground" for granting an exclusivity extension is "the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization"); In re Crescent Mfg. Co., 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990) (stating that "cause" can include an "unusually large case") (citation omitted); In re Texaco, Inc., 76 B.R. at 326 (citations omitted) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."); see also H.R. Rep No. 95-595, at 231–32 (1978); reprinted in 1978 U.S.C.C.A.N. 5963, 6191 ("[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement."). Indeed, the size and complexity of the case, by itself, can support a determination that cause exists for an extension of exclusivity. See In re Express One Int'l, 194 B.R. at 100 (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the case alone); In re Texaco, 76 B.R. at 325–27 (cause existed to warrant extension of exclusivity based on the size and complexity of the case alone).

23. Prior to the sale, the Debtors ran complex operations and dealt with a variety of constituencies. After months of marketing efforts, the Debtors completed the sale process for substantially all of their assets. *See* Sale Motion [Docket No. 378]; Sale Orders [Docket Nos. 622-625]. Over the past several months, the Debtors have been working diligently with their advisors to develop a chapter 11 plan in conjunction with the Committee. An additional extension of the Exclusivity Periods will ensure that the Debtors have the opportunity to remain focused on finalizing the chapter 11 plan process so that these cases are administered as efficiently as possible for the benefit of the Debtors' creditors.

### B. The Debtors Need More Time to Finalize the Chapter 11 Plan Process and Provide Stakeholders with Relevant Information

24. The Debtors are continuing to work with the Committee and other key stakeholders to finalize a consensual chapter 11 plan. See In re Texaco, 75 B.R. at 327 (granting the debtors an exclusivity extension to, among other things, provide creditors and other parties with adequate financial information and sufficient time with which to reach an informed decision regarding a proposed plan). Indeed, the Debtors expect to file the plan no later than January 25, 2017, so that the disclosure statement can be approved at the hearing scheduled for February 22, 2017.

25. The Debtors believe that maintaining their exclusive right to file and solicit votes on a chapter 11 plan is critical to their ability to complete this process and achieve their remaining goals as efficiently and expeditiously as possible without the risk of the substantial additional costs and disruption that could follow an expiration of the Exclusivity Periods. Accordingly, the Debtors request an extension of the Exclusivity Periods to allow the Debtors to continue to focus on finalizing the progress to date and to preclude the costly disruption that would occur if competing plans were to be proposed at this late stage.

C. **The Debtors Have Made Good Faith Progress Toward a Confirmable Plan**

26.     After many months of working with their professionals, the Debtors have consummated the sale of substantially all of their assets,.  Since the sale closings, the Debtors and their advisors have been working closely with the Committee and other stakeholders to develop the a consensual chapter 11 plan.  This, along with progress in resolving many issues that have arisen since the Petition Dates, justifies the requested extension of the Exclusivity Periods.  See In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (granting an extension of the debtor's exclusive periods because the debtor was making reasonable efforts to implement its extensive turnaround program).

27.     This progress is substantial, given the size and complexity of these cases, which are relevant factors in determining whether a debtor has shown progress in attempting in good faith to formulate a viable plan of reorganization.  See Quality Inns Int'l, Inc. v. L.B.H. Assoc. Ltd. P'ship, Nos. 89-2443 to 89-2445, 1990 WL 116761, at *2 (4th Cir. July 26, 1990), cert denied, 498 U.S. 1083 (1991).  As discussed above, the Debtors' cases are large and complex.  Taking into account the size and complexity of the Debtors' cases, there can be no doubt that the Debtors have been working diligently to negotiate a broadly-supported chapter 11 plan.  An additional extension of the Exclusivity Periods will ensure that the Debtors have the opportunity to remain focused as they finalize these negotiations and prepare for the plan confirmation process.

D. **The Debtors Have Been Paying Their Postpetition Debts When Due.**

28.     The fact that a debtor has sufficient liquidity to pay its postpetition debts as they come due supports the granting of an extension of the Exclusivity Periods, because it suggests that such an extension will not jeopardize the rights of postpetition creditors and counterparties.

The Debtors have been paying their undisputed postpetition debts as they come due and expect to continue to be able to do so.

### E. The Extension of Exclusivity Requested in this Motion is Reasonable in Light of the Extensions Granted in Similar Chapter 11 Cases

29. Relief similar to the relief requested herein has been routinely granted by bankruptcy courts. See, e.g., In re Patriot Coal Corp., No. 12-51502-659 (Bankr. E.D. Mo. Apr. 26, 2013) (granting Debtors' second motion to extend exclusivity periods by 120 days after an initial extension of 180 days); In re Alpha Natural Resources, Inc., Case No. 15-33896 (Bankr. E.D. Va. Nov. 24, 2015) (granting Debtors' motion to extend exclusivity periods by 120 days); In re Allied Nev. Gold Corp., Case No. 15-10503 (Bankr. D. Del. Aug. 26, 2015) (same).

### F. The Debtors Diligently Have Made Progress to Resolve Fundamental Plan Matters.

30. Since the Petition Date, the Debtors have worked diligently to resolve issues that are critical to a successful chapter 11 plan process. As noted above, this includes the sale of substantially all of the Debtors' assets, and the related issues that arose under the Delaware Plan. Under the Court's guidance, the Debtors are continuing to seek the resolution of various matters that will enable the Debtors to complete a successful wind-down of operations. This ongoing work further supports an extension of the Exclusivity Periods.

### G. The Debtors Are Being Well Managed.

31. The Debtors have an executive management team consisting of individuals who collectively possess many decades of experience working in the bioenergy industry. The Debtors' executive management team has worked diligently with their restructuring advisors to address the myriad and complex issues that have arisen throughout these chapter 11 cases. In sum, the Debtors submit that ample cause exists under the Bankruptcy Code and the applicable case law for the requested extensions of the Exclusivity Periods.

**NOTICE**

32. Consistent with the *Order Establishing Certain Notice, Case Management and Administrative Procedures*, entered on April 22, 2016 [Docket No. 255], the Debtors will serve notice of this Motion on the Core Parties and (as defined in the Case Management Order). All parties who have requested electronic notice of filings in these cases through the Court's ECF system will automatically receive notice of this motion through the ECF system no later than the day after its filing with the Court. A copy of this Motion and any order approving it will also be made available on the Debtors' Case Information Website (located at https://cases.primeclerk.com/abengoa). A copy of the Proposed Order will be made available on the Debtors' Case Information Website. The Proposed Order may be modified or withdrawn at any time without further notice. If any significant modifications are made to the Proposed Order, an amended Proposed Order will be made available on the Debtors' Case Information Website, and no further notice will be provided. In light of the relief requested, the Debtors submit that no further notice is necessary.

[*Remainder of page is intentionally left blank*]

WHEREFORE the Debtors respectfully request that the Court grant the Debtors the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:  January 17, 2017
St. Louis, Missouri

Respectfully submitted,

**ARMSTRONG TEASDALE LLP**

 /s/ Richard W. Engel, Jr.
Richard W. Engel, Jr. #34641MO
Susan K. Ehlers #49855MO
Erin Edelman  #67374MO
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  (314) 621-5070
Facsimile:  (314) 621-5065
rengel@armstrongteasdale.com
sehlers@armstrongteasdale.com
eedelman@armstrongteasdale.com

*Local Counsel to the Debtors and Debtors in Possession*

-and-

**DLA PIPER LLP (US)**
Richard A. Chesley #6240877IL (admitted *pro hac vice*)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone:  (312) 368-4000
Facsimile:  (312) 236-7516
richard.chesley@dlapiper.com

R. Craig Martin #005032DE (admitted *pro hac vice*)
1201 North Market Street, Suite 2100
Wilmington, Delaware  19801
Telephone:  (302) 468-5700
Facsimile:  (302) 394-2341
craig.martin@dlapiper.com

*Counsel to the Debtors and Debtors in Possession*